PAUL SVEC, PETITIONER-RESPONDENT, v. WESTFIELD
MOTOR SALES CO., INC., RESPONDENT-APPELLANT

Superior Court of New Jersey
Appellate Division

Argued February 9, 1970—Decided April 29, 1970.

226

Before Judges CONFORD, COLLESTER and KOLOVSKY.

*Mr. Roland Vreeland* argued the cause for appellant (*Mr. Isidor Kalisch,* attorney).

*Mr. Otto C. Staubach* argued the cause for respondent (*Messrs. Weiner, Weiner* and *Glennon,* attorneys).

The opinion of the court was delivered by

CONFORD, P. J. A. D. The nature of this litigation is indicated in the opinion of the Union County Court, reported at 105 *N. J. Super.* 226 (1969).

The principal ground of appeal is that the judge of compensation was without "jurisdiction" to ignore the finding of fact by the "referee, formal hearings" in the earlier section 22 proceeding (*N. J. S. A.* 34:15–22) that there was no causal connection between the accident and any impairment of the eye itself, as distinguished from the injury to the eyebrow or forehead. The contention is that the stated earlier finding was *res judicata* and therefore precluded the later finding, even though made in a section 27 proceeding (*N. J. S. A.* 34:15–27), that the claimed injury to the eye was causally related to the same accident, and the consequent conclusion that petitioner's disability from the accident had increased since the first award.

■ We are in essential agreement with the reasons given by Judge Di Buono in the County Court for rejecting respondent's argument. We add the following. The fact that a different bodily unit or function is implicated in the increased overall disability from that involved in the earlier award does not derogate from the appropriateness of section 27 relief. See *Yeomans v. Jersey City,* 27 *N. J.* 496, 509 (1958). Moreover, the fact that the judge of compensation in the later proceeding did not articulate his conclusions in terms of degree of increase of disability, as strictly as he should have, is not material since the substance of his determination amounted to such a finding, and the County Court placed its affirmance on that basis. See the County Court opinion, 105 *N. J. Super.,* at 232–233.

■ On this appeal respondent raises for the first time the contention that it should have been credited in the final judgment for the $673.75 initially awarded against it for the injury to the right eyebrow. We could well ignore the belated argument. *Baginsky v. American Smelting & Refining Co.,* 88 *N. J. Super.* 69, 83 (App. Div. 1965), certif. den. 45 *N. J.* 588 (1965). It will suffice to say we have considered and find no merit in the contention.

Respondent also argues that the compensation court erred in allowing $40 per week for the scheduled 200 weeks for loss of sight of the eye contrary to the rate of $35 per week fixed by the statute as it stood as of the date of the accident. *N. J. S. A.* 34:15–12(c).[1] This point was raised in the County Court by simple assertion in the respondent's brief but was not dealt with in the opinion of that court, probably because not supported by argument. We deal with it because the question is important, has not been ruled upon before, and should be settled.

---

[1]The rate was increased to $40 per week by *L.* 1962, c. 57, § 1, but this fact was not the basis for the award in the compensation court and is here irrelevant.

In allowing petitioner $40 per week against respondent for the scheduled 200 weeks of loss of sight of the eye the judge of compensation said:

* * * the rate being determined by the fact that his visual disability is a significant and necessary part of his total disability; and that being totally disabled as a result of this accident in conjunction with other pre-existing but non-aggravated disabilities — namely heart and nephritis — he should be paid at the rate applicable for total disability at the time of his accident.

The allusion to the heart and nephritis conditions is related to the fact that after filing his petition for increased disability petitioner had also filed a petition for Fund (formerly known as the One Percent Fund) benefits pursuant to *N. J. S. A.* 34:15–95 based on the allegation that the combined effect of his employment-connected injury and other previous nonconnected ailments rendered him permanently and totally disabled. The judge of compensation found that this was so and that the heart disability and the nephritis disability were each 25% of total. No contention to the contrary has been made by anyone. Although the Attorney General, presumably representing the Fund, was present before the Compensation Division, he did not appear before the County Court or on this appeal. His nonparticipation will not, however, prejudice the Fund, for we have concluded that although petitioner is entitled to the $40 rate for the scheduled 200-week period, it is payable in entirety by respondent-employer and not to any extent by the Fund.

The issue presented, from the standpoint of petitioner, is merely whether he is entitled to $40 per week for the 200 weeks in question or only $35. But determination thereof is hardly separable, as a matter of statutory construction, from the question as to who is liable for the $5 difference, if petitioner prevails, as between respondent and the Fund. This is so because petitioner's whole position is premised on the provisions of the Fund Act, specifically, *N. J. S. A.* 34:15–95.

■ The general purposes and objects of the Fund Act have been frequently reviewed by the courts and need not be detailed here. It will suffice to say that if a person already suffering partial permanent disability from a noncompensable condition or accident sustains a work-connected accident and becomes totally and permanently incapacitated from the combined effect of the two disabilities, he is entitled under section 95 to compensation for the full disability, but in such case the employer's liability is limited to the portion of the incapacity produced by the employment accident, and the balance is charged to the statutory fund (except for certain situations specified in paragraphs (a) to (d) of section 95 not here claimed to be applicable). *Belth v. Anthony Ferrante & Son, Inc.,* 47 *N. J.* 38, 48 (1966); *Balash v. Harper,* 3 *N. J.* 437, 442 (1950).

■■ We address our attention first to whether petitioner is entitled to $40 a week rather than $35 for the 200 weeks scheduled for loss of sight of an eye in section 12(c) from *someone,* whether the $5 difference is due from the employer or the Fund. We think it hardly debatable but that he is entitled to the $40 rate. Section 95 expressly states that where a Fund situation is implicated, compensation payments shall be made "in accordance with the provisions of paragraph (b) of section 34:15–12." That paragraph deals with "disability total in character and permanent in quality" and fixes a maximum allowance of $40 per week (it is not questioned that petitioner was entitled to the maximum as against the lesser rates specified in "Wage and Compensation Schedule" of section 12). It is therefore clear to us that the limitation of a $35 maximum rate in paragraph (c) of section 12 for such scheduled losses as the loss of sight of an eye is intended not to be applicable when that loss is an integral part of the combined disabilities equating total and permanent disability which render operative the Fund provisions of section 95. Otherwise the workman-beneficiary of section 95 would realize less than the full maximum rate expressly specified in that section. We can only conclude that

the scheduled limitation of $35 a week in section 12 (c), relied upon here by respondent, applies only when a claim for Fund benefits under section 95 is not implicated.

This brings us to the issue as to who is liable for the $5 weekly difference for the 200 weeks — the employer or the Fund.

Prior to the adoption of the amendment of section 95 by *L*. 1940, *c*. 133, the section read, in pertinent part:

In such cases [total disablement from the combined conditions or accidents] the compensation payable from such fund shall cover that *portion of the period* for which the employer is not legally responsible due to the permanent and partial disability suffered or possessed by the employee at the time that the employee sustained the injury as a result of which the employee became totally and permanently disabled. [Emphasis added]. See *L*. 1938, *c*. 198.

In the process of a rather sweeping revision and amendment of section 95 the Legislature, by *L*. 1940, *c*. 133, omitted the sentence quoted immediately hereinabove. But it inserted, in a different location of the revamped section, the following new language:

Upon the approval of an application for benefits, the compensation payable from such fund shall be made from the date when the final payment of compensation by the employer is or was payable for the injury or injuries sustained in the employment wherein the employee became totally and permanently disabled * * *.

This provision continued effective as of the date of the instant accident and down to the present time.

In *Toohey v. Gorman*, 125 *N. J. L.* 41 (E. & A. 1940), dealing with the statute as of prior to the 1940 amendment, the court stated (at 44) that "[t]he evident design of section 34:15–95 of the Revision * * * was to relieve the the employer of the obligation to render compensation for the portion of the period of disability for which he was 'not legally responsible due' to the permanent and partial disability suffered by the employe [*sic*] at the time the wholly disabling compensable injury was sustained."

In the instant case the *period* of disability for which the employer is responsible obviously includes the 200 weeks specified by the statute for loss of the sight of an eye sustained in an accident at work. Under the rationale of the statute as expounded in the *Gorman* case, *supra,* accordingly, whatever money the employee is entitled to for the stated period of 200 weeks is allocable as the responsibility of the employer, not the Fund.

We find no basis for a different conclusion in the legislative revision of section 95 by *L.* 1940, *c.* 133, mentioned above. The new language added thereto and quoted above was, in our view, essentially a substitute for that omitted from the section as it previously stood. No intent for a substantive alteration in the respective responsibilities of the employer and the Fund is discernible to us from the change or argued by respondent. No clue of any such intent appears in the Statement of the introducers of the bill which was enacted into law as *L.* 1940, *c.* 133. To the contrary, the present statutory direction that compensation from the Fund does not begin until the final payment by the employer is made or payable strongly indicates that whatever payments appertain to the 200 weeks for the eye are to be met by the employer and are thus removed from any responsibility of the Fund.

Our ultimate conclusion that the employer must pay the additional $5 per week for the 200 weeks is not incompatible with the basic philosophy of the Fund legislation. Were it not for the Fund Act, as was demonstrated in *Belth v. Anthony Ferrante & Son, Inc., supra,* 47 *N. J.,* at 45–48, employers would continue to be, as they previously were, responsible for the entirety of the total and permanent disability consequent upon an accident at work even though the disability would not have been permanent and total had it not been for a previous partial disability not attributable to the employment. See *Combination Rubber Mfg. Co. v. Obser,* 95 *N. J. L.* 43 (Sup. Ct. 1920), aff'd o. b. 96 *N. J. L.* 544 (E. & A. 1921). Respondent continues, notwithstanding today's decision of the present case, to retain the basic benefit

of the Fund Act in that the Fund takes over liability for that period of disability (here, for the heart and nephritis conditions) distinct from the period of disability for the eye which is the exclusive responsibility of the employer. That it must pay for that period at the permanent and total rate does not undermine the basic benefit it retains under the Fund scheme.

Judgment affirmed.